KOKOMO STEEL AND WIRE COMPANY *v.* RAMSEYER.

[No. 23,868.    Filed November 19, 1920.    Rehearing denied January 28, 1921.]

1. MASTER AND SERVANT.—*Injuries to Servant.*—*Contributory Negligence.*—*Assumption of Risk.*—*Employers' Liability Act.*—Where iron rods piled upon the floor beside a table on which a servant was engaged in making wire screens made the place of work dangerous, and the servant notified the employer's foreman of the danger, but was told to return to his duties and that the rods would be removed at once, his resumption of work was not contributory negligence which would defeat a recovery under the Employers' Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914) for injuries from slipping on the rods thirty minutes later, nor did it amount to an assumption of risk from negligent failure to remove the rock.   p. 194.

2. MASTER AND SERVANT.—*Injuries to Servant.*—*Assumption of Risk.*—*Promise to Repair.*—Where the master has been notified of a defect making the place of work dangerous, and he has promised to remedy the defect and directed the workman to continue at his employment, the servant does not assume the risk of injury by reason of such defect by remaining at work with knowledge of it for a reasonable .time within which to make the promised repairs.   p. 195.

3. MASTER AND SERVANT.—*Injuries to Servant.*—*Complaint.*—*Sufficiency.*—*Employers' Liability Act.*—In a servant's action for personal injuries, complaint *held* to state a cause of action under the Employers' Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914).   p. 195.

4. TRIAL.—*Argument.*—*Misconduct of .Counsel.*—*Reference of Defendant's Financial Condition.*—In a servant's action against the master for personal injury, a statement by plaintiff's counsel in argument that "it does not matter whether this defendant corporation is worth one million or eight million dollars, and it does not matter whether the stock of this defendant is worth $100 or $400 a share," was error, where it was not based on the evidence; nor was it justified by opposing counsel's statement that it was immaterial whether defendant was a farmer or a corporation.   p. 195.

5. TRIAL.—*Interrogatories.*—S c o p e.—S t a t u t e.—Under §572 Burns 1914, Acts 1897 p. 128, the right to submit interrogatories to be answered in case a general verdict is returned only extends to questions of fact, and questions relating to mere subsidiary facts to be considered in deciding the ultimate facts in issue, and which were likely to impress the jury that the

only question before them was how much damages a corporation ought to .pay a servant injured as plaintiff was, were improper.  p. 196.

From Howard Circuit Court; *William C. Overton,* Judge.

Action by Harry Ramseyer against the Kokomo Steel and Wire Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Conrad Wolf, Earl B. Barnes* and *C. W. Roll,* for appellant.

*McConnell, Jenkines & Jenkines* and *Overson & Manning,* for appellee.

EWBANK, J.—This was an action by a workman against his employer to recover damages for personal injuries. It is first complained that the trial court erred in overruling appellant's demurrer to the complaint, which is in a single paragraph. The complaint avers in substance that the appellant is, and for a long time before July 23, 1915, had been, engaged in operating a factory, in which it employed more than 200 men; that on said date, and prior thereto, appellee was in appellant's employ, and was engaged in making screens, woven out of wire; that appellant had in its plant a table, three feet high, on which it had instructed appellee to make wire screens, but through its agents and servants had negligently piled smooth iron rods about the base and along beside said table, and it was a dangerous place to work; that appellant had negligently permitted said rods to accumulate and rest in said place for more than thirty days prior to appellee's injury, which fact was known to appellant or its superintendent in charge of the plant, and by reasonable diligence should have been known to them. Appellant alleges that it was dangerous for him to make said

screens and to work about said table while the rods were piled about it, for certain reasons given, all of which was known, or by the use of ordinary care should have been known, to appellant and its foreman in charge of the plant; that on said date appellee notified appellant, through its said foreman whose orders and directions appellee was then and there compelled to obey, that said rods were so piled about said table, and that it was dangerous for him to work about the table while they were there, and appellant, through said foreman, ordered and directed appellee to go back to his table and to work, and that he would at once have said rods removed from about the table; that plaintiff obeyed the order of said foreman, and resumed his work, making wire screens, but that appellant and said foreman negligently failed to remove the rods or to attempt to remove them; and that thirty minutes later, while appellee was so engaged in making screens at said table, at labor for appellant, he slipped on the rods, and fell over against the table, and as a result and by reason thereof, a wire struck him in the right eye and caused certain injuries; that all of said injuries were caused by the negligence of appellant, through its foreman, and were caused as a direct and proximate result of appellant's negligence; that plaintiff has been put to an expense of $500 for medical attention and has been damaged $8,000. The complaint expressly alleges that the injury occurred without any carelessness or negligence upon the part of plaintiff contributing thereto.

The act of the workman in resuming his work at the table with knowledge that the rods were lying on the floor about it, when the foreman told him to do

1. so, and told him that the foreman would at once have them removed, was not necessarily such contributory negligence as would defeat the action, under the act of 1911, cited below, and his return to work under

the circumstances alleged did not amount to an assumption of the risks growing out of the master's negligent failure to remove the rods, as the foreman had promised. Even at common law it is not necessarily negligence, as matter of law, for a workman to encounter a known danger in obedience to an express command of

2. the master; and where the master has been notified of a defect making the place of work dangerous, and has promised to remedy the defect and directed the workman to continue at his employment, the servant does not assume the risk of injury by reason of such defect by remaining at work with knowledge of it for a reasonable time within which to make the promised repairs. *Standard Oil Co.* v. *Helmick* (1897), 148 Ind. 457, 47 N. E. 14.

And under §8020a *et seq.* Burns 1914, Acts 1911 p. 145, the facts alleged are sufficient to constitute a cause of action. There was no error in over-

3. ruling the demurrer. *J. Wooley Coal Co.* v. *Tevault* (1918), 187 Ind. 171, 118 N. E. 921, 119 N. E. 485; *T. J. Moss Tie Co.* v. *Hite* (1921), *post* 198, 128 N. E. 752.

Appellant's motion for a new trial presents for consideration certain alleged misconduct of counsel for the appellee in argument and the action of the court

4. in submitting to the jury a series of interrogatories. In his final argument to the jury appellee's attorney said: "Gentlemen of the jury, it does not matter whether this defendant corporation is worth one million or eight million dollars, and it does not matter whether the stock of this defendant is worth $100 or $400 a share." It will be observed that this was impliedly an assertion that the defendant was worth at least $1,000,000, and that its stock was worth at least $100 a share, although there was no evidence at all as to the value of its property or of its stock, and there

was no issue to which such evidence would properly apply.

The appellant immediately objected to this statement and moved the court to instruct the jury to disregard it, which motion the court overruled, and appellant excepted. Appellant then moved to withdraw the submission of the cause from the jury because of the prejudicial character of the statement, which motion was also overruled. No justification whatever for such a statement by counsel is shown by the record. There was nothing in the evidence on which it could be based: Neither do we think that a mere statement previously made by opposing counsel to the effect that it did not matter whether the defendant was a farmer or a corporation, if such a statement was made, as has been asserted in argument, could afford justification for the statement complained of. It was obviously made for the purpose of influencing the jury to return a verdict different from what would be returned if the appellant employer were other than a rich corporation, and it clearly had a tendency to exert such influence.

The appellee presented a series of twenty-four interrogatories to the court, with a request that they be submitted to the jury. The defendant objected to each and all of these interrogatories, insisting that none of them called for the decision of any issuable facts, but that each was directed solely to inquiries pertaining to the amount of damages, but not to the measure of damages.

These interrogatories asked as to the age, health, skill, and period of employment in appellant's factory of the appellee, the fact that an injury to his right eye destroyed it and impaired the other eye, the time that appellee was confined to his home, the permanency of his injury, the pain he suffered, how long it continued, the effect on his nervous system and on his ability to

earn a livelihood, the probability that the destroyed eye might have to be removed, and appellee's weight at the time of the injury, and thereafter, and at the time of the trial. In some instances substantially the same fact was called for by two or more interrogatories, there being four interrogatories concerning the effect of the injury on appellee's nervous system, of which Nos. 15 and 23 were in almost the same words. And after No. 6 had asked if the injury caused the "loss of sight of his right eye," No. 9 asked if there was a "total destruction of his vision or sight" in that eye, No. 10 asked if such injury was "permanent;" No. 14 asked if it would "hamper" appellee "throughout life," and No. 24 asked if the conditions of health resulting from the injury were "in all reasonable probability permanent." The bill of exceptions recited that, after appellant's objections to these interrogatories had been overruled, the attorney for the appellee, in his closing argument to the jury, read all of the interrogatories to the jury, and told the jury that they had been criticised by opposing counsel, but that "these interrogatories have been submitted by the court, and I ask you why these interrogatories would have been submitted by the judge on the bench if they had not been proper for your determination."

The right to submit interrogatories to be answered in case a general verdict is returned only extends to "questions of fact * * * in the form of interrogatories on any or all of the issues in the case." §572 Burns 1914, Acts 1897 p. 128.

Some of the foregoing interrogatories came within this rule. But many of them related to mere subsidiary facts to be considered in deciding the ultimate facts in issue, and from their form, and the many repetitions of the same questions, when considered in connection with the statements made by counsel in the

argument, they were well calculated to give to the jury an impression that the only question before them was how much damages a corporation ought to pay a workman who was injured as appellee was while in its employ.

Appellant alleged in its motion for a new trial that the damages were excessive, but seems to have abandoned that ground on appeal. And if the jury, without being improperly influenced, had awarded appellee $4,500 for his injuries of which there was evidence, this court would doubtless have refused to set the verdict aside on appeal as being excessive. But it is in excess of the minimum which a jury could have awarded upon the evidence heard. Whether any one of the causes above stated would alone have made it necessary for the court to reverse the judgment need not be decided. It is clear that by reason of the accumulated effect of the improper acts of counsel and the action of the court upon the several objections thereto, the judgment must be reversed.

The judgment is reversed, at the costs of the appellee, with directions to grant a new trial.

Lairy, J., not participating.